**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| **LEWIS STEIN,** )<br>**individually and on behalf of all** )<br>**others similarly situated,** )<br>         **Plaintiff** )<br>**v.** )<br>)<br>**TANGOE, INC., ALBERT R.** )<br>**SUBBLOIE JR., GARY R.** )<br>**MARTINO, and GARY P. GOLDING** )<br>         **Defendants.** )<br>)  | **CLASS ACTION**<br><br>**3:13-cv-00286-VLB** |

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

**TABLE OF CONTENTS**

I.    Introduction...................................................................................... 1

II.   Plaintiff Has Not Adequately Pleaded Loss Causation ................................... 2

III.  None Of The Challenged Statements Were Materially False Or
      Misleading ................................................................................. 8

IV.   Plaintiff's Scienter Allegations Remain Deficient ........................................... 12

      A.    Defendants' Stock Sales ........................................................... 12

      B.    Plaintiff's New Motive Theory Is Defective ........................................... 13

      C.    "Access to Information" Is Not Enough ................................................ 14

      D.    Unrelated Litigation ................................................................... 15

V.    The Control Person Claims Are Defective ..................................................... 15

VI.   Conclusion .................................................................................. 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Acticon AG v. China N.E. Petroleum Holdings Ltd.*,
   692 F.3d 34 (2d Cir. 2012) ......................................................................... 2

*AIG Global Sec. Lending Corp. v. Banc of America Sec. LLC*,
   254 F. Supp. 2d 373 (S.D.N.Y. 2003) ..................................................... 10

*Amgen Inc. v. Conn. Retirement Plans & Trust Funds*,
   133 S.Ct. 1184 (2013) ................................................................................ 8

*Basic Inc. v. Levinson*,
   485 U.S. 224 (1988) .................................................................................... 4

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .................................................................................... 2

*Dura Pharm., Inc. v. Broudo*,
   544 U.S. 336 (2005) ................................................................................ 3, 7

*Erica P. John Fund, Inc. v. Halliburton Co.*,
   131 S.Ct. 2179 (2011) ................................................................................ 8

*George v. China Automotive Systems, Inc.*,
   2012 WL 3205062 (S.D.N.Y. Aug. 8, 2012) .......................................... 12

*In re Bear Stearns Cos., Inc. Sec. Deriv., and ERISA Litig.*,
   763 F. Supp. 2d 423 (S.D.N.Y. 2011) ................................................. 7, 8

*In re BP P.L.C. Sec. Litig.*,
   922 F. Supp. 2d 600 (S.D. Tex. 2013) ................................................... 6

*In re Ebix, Inc. Sec. Litig.*,
   898 F. Supp. 2d 1325 (N.D. Ga. 2012) ................................................. 11

*In re eSpeed, Inc. Sec. Litig.*,
   457 F. Supp. 2d 266 (S.D.N.Y. 2006) ................................................... 6

*In re General Electric Co. Sec. Litig.*,
   857 F. Supp. 2d 367 (S.D.N.Y. 2009) ................................................... 8

*In re JP Morgan Chase Sec. Litig.*,
   363 F. Supp. 2d 595 (S.D.N.Y. 2005) ................................................. 14

*In re Omnicom Grp., Inc. Sec. Litig.,* ("*Omnicom I*")
    2005 WL 735937 (S.D.N.Y. March 30, 2005)................................ 1, 9, 10

*In re Omnicom Grp., Inc. Sec. Litig.,* ("*Omnicom III*")
    597 F.3d 501 (2d Cir. 2010) ............................................ 3, 4, 5, 6

*In re Scholastic Corp. Sec. Litig.,*
    252 F.3d 63 (2d Cir. 2001) ............................................ 12

*In re Xerox Corp. Sec. Litig.,*
    935 F. Supp. 2d 448 (D. Conn. 2013)................................ 2

*Kalnit v. Eichler,*
    264 F.3d 131 (2d Cir. 2001) ............................................ 13

*Lattanzio v. Deloitte & Touche LLP,*
    476 F.3d 147 (2d Cir. 2007) ............................................ 8

*Lentell v. Merrill Lynch & Co., Inc.,*
    396 F.3d 161 (2d Cir. 2005) ............................................ 3, 4

*Lormand v. US Unwired, Inc.,*
    565 F.3d 228 (5th Cir. 2009) ............................................ 6

*Malin v. XL Capital Ltd.,*
    499 F. Supp. 2d 117 (D. Conn. 2007)................................ 12

*Mass. Ret. Sys. v. CVS Caremark Corp.,*
    716 F.3d 229 (1st Cir. 2013) ............................................ 6

*Meyer v. Greene,*
    710 F.3d 1189 (11th Cir. 2013)........................................ 3, 4, 5, 7

*Miley v. Hous. Auth. of City of Bridgeport,*
    926 F. Supp. 2d 420 (D. Conn. 2013)............................... 1, 9, 14

*NECA-IBEW Health & Welfare Fund v. Pitney Bowes Inc.,*
    2013 WL 1188050 (D. Conn. Mar. 23, 2013) ...................... 9, 13, 14, 15

*Rombach v. Chang,*
    355 F.3d 164 (2d Cir. 2004) ............................................ 13

*Rothman v. Gregor,*
    220 F.3d 81 (2d Cir. 2000) ............................................ 13

*Tabak v. Canadian Solar Inc.,*
    --- Fed. Appx. ----, 2013 WL 6697923 (2d Cir. Dec. 20, 2013)................ 13

*Teachers' Ret. Sys. of La. v. Hunter*,
   477 F.3d 162 (4th Cir. 2007) ............................................................... 5

*Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*,
   531 F.3d 190 (2d Cir. 2008) ............................................................... 13

*Union Cent. Life Ins. Co. v. Ally Fin., Inc.*,
   2013 WL 2154220 (S.D.N.Y. Mar. 29, 2013) ........................................ 15

OTHER AUTHORITIES

Rule 8 ...................................................................................................... 5

Rule 8(a) .............................................................................................. 2, 5

Rule 9(b) ........................................................................................... 2, 5, 9

I.     **INTRODUCTION**

Plaintiff's Opposition is transparently deficient.  It does not credibly address defendants' loss causation argument, which is case dispositive.  Much of the Opposition simply repeats defective, conclusory allegations of the Complaint without identifying a factual basis for the allegations or otherwise addressing defendants' showing that they are not well-pleaded.

Plaintiff also throws overboard the central theory of his Complaint in favor of a *new*, *contradictory*, and equally *factually unsupported* assertion.  The Complaint asserted that the only proper way to calculate organic recurring revenue growth was to focus exclusively on growth in revenue over time from the Tangoe business as it existed before it acquired any other business – the so-called "Core Subsidiary" (Compl. ¶¶ 5, 11).  Now, according to the Opposition, the only proper way to calculate such growth is to include the revenue of an acquired business in the calculation, but only twelve months after the acquisition. (*Compare* Opp. at 8).  This contradictory nonsense is also procedurally improper. *See Miley v. Hous. Auth. of City of Bridgeport*, 926 F. Supp. 2d 420, 432 (D. Conn. 2013) (plaintiff cannot amend complaint in opposition to motion to dismiss).

What the new allegation reveals most clearly is that the Complaint's assertion that there is a single proper method for calculating organic growth is both wrong *and* legally and factually unsupported.  Plaintiff is simply incorrect that *In re Omnicom Grp., Inc. Sec. Litig.*, 2005 WL 735937, at *1, *5 (S.D.N.Y. March 30, 2005) ("*Omnicom I*"), held that there is just one proper method.  In fact, that case rejects that contention and holds that the plaintiff there had not shown that

the issuer misled investors by using its own method.   Because plaintiff has not alleged facts to support the conclusion that either of the two inconsistent methods he has advanced is the only proper method, and because there is no legal support for either contention, the Complaint must be dismissed.

Plaintiff also pretends that an organic growth rate *projection* for "the full year *2013*" was somehow an "admission" about what Tangoe's organic growth rate had been during the Class Period (*i.e.*, portions of *2011* and *2012*).  (Opp. at 8, 12, 16).  Not only does the projection cover a different time period, but also it was prepared for illustrative purposes using a disclosed methodology that depressed organic growth rate in 2013 (relative to other methods) and that depressed that rate more in 2013 than it would have depressed it in earlier periods.

## II.    PLAINTIFF HAS NOT ADEQUATELY PLEADED LOSS CAUSATION

The Complaint offers two disclosures alleged to have corrected inflation in Tangoe's stock price: the biased StreetSweeper and Copperfield attack pieces (Compl. ¶¶ 149-51).  The Opposition proposes a third: the post-Class Period Wedbush article (Opp. at 28).  None of them revealed a single fact that was "new to the market," *In re Xerox Corp. Sec. Litig.*, 935 F. Supp. 2d 448, 493 (D. Conn. 2013), let alone a new fact that revealed the falsity of a prior statement by defendants.[1]  (MTD at 42;[2] Hornstine Decl. Ex. 13 (Wedbush report)).  The

---

[1]     Plaintiff implies in a footnote that he only needs to plead loss causation under the plausibility pleading standards embodied by Rule 8(a) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  (Opp. at 27 n.13).  Courts have split on whether Rule 8(a) or Rule 9(b) applies to the loss causation element, but the Court need not decide this issue here because plaintiff has not pleaded loss causation under either standard.  *See Acticon AG v. China N.E. Petroleum Holdings Ltd.*, 692 F.3d 34, 38 (2d Cir. 2012) (discussing split in authority).

Opposition does not contend otherwise,[3] and the Complaint must be dismissed.[4]
*See In re Omnicom Grp., Inc. Sec. Litig.,* 597 F.3d 501, 512 (2d Cir. 2010)
(*"Omnicom III"*) ("negative characterization of already-public information" cannot
constitute corrective disclosure to satisfy loss causation requirement); *Meyer v.
Greene,* 710 F.3d 1189, 1199 (11th Cir. 2013) (affirming dismissal where alleged
corrective disclosure was short sellers' opinion based on public information,
explaining that "mere repackaging of already public information by an analyst or
short-seller is simply insufficient to constitute a corrective disclosure").

     Plaintiff's principal response is a half-hearted critique of the established
case law (*see* MTD at 41-42). He argues that these cases are wrong because
participants in an efficient market somehow did not understand (or had no
"reason to doubt") Tangoe's public disclosures or calculations until they read
analyst reports months later. (Opp. at 27-29). The basic problem with this
argument is that plaintiff cannot rely on the efficient market hypothesis (as he

---

[2]    Defendants' Memorandum in support of their motion to dismiss [Docket
No. 72] is cited as "MTD."

[3]    Both the Copperfield attack and the Wedbush report were published *after*
the end of the proposed class period (Compl. ¶¶ 21-22) and thus they cannot
plausibly establish loss causation for this Complaint in any event. (MTD at 42
n.35). Plaintiff's Opposition fails to address this argument or the cases cited in
defendants' brief.

[4]    Contrary to plaintiff's contention, cases can be and are dismissed routinely
at the pleading stage for failure to allege loss causation properly. *Compare* Opp.
at 30 n.17 *with Dura Pharm., Inc. v. Broudo,* 544 U.S. 336, 346 (2005) ("Our holding
about plaintiffs' need to *prove* proximate causation and economic loss leads us
also to conclude that the plaintiffs' complaint here failed adequately to *allege*
these requirements."); *Lentell v. Merrill Lynch & Co., Inc.,* 396 F.3d 161, 177 (2d
Cir. 2005) (affirming dismissal on loss causation grounds where plaintiff
"offer[ed] no factual basis to support the allegation that … misrepresentations
and omissions caused the losses").

does, *see C*ompl. ¶ 167), and at the same time rely on a theory of loss causation that is inconsistent with that theory.[5]  (*Compare* MTD at 40 n.32 *with Meyer*, 710 F.3d at 1198 ("Having based their claim of reliance on the efficient market theory, the Investors must now abide by its consequences.")).

Plaintiff's proffered factual distinctions of these cases are specious.  For example, plaintiff cannot distinguish *Meyer* – a case that is essentially identical to this one – by suggesting incorrectly that plaintiff there had not alleged that the company "obfuscated any information," and by noting that the alleged corrective disclosure there "specifically state[d] that it was based on public information."[6] (Opp. at 30).  The short attacks alleged to be corrective in this case, like the one in *Meyer,*  also expressly stated that they were based only on public information (*compare* MTD at 23-24, 42 *with Meyer*, 710 F.3d at 1198); and both *Meyer* and this case are open market securities fraud cases alleging that the issuer made

---

[5]      "The efficient market theory ... posits that all publicly available information about a security is reflected in the market price of the security."  *Meyer*, 710 F.3d at 1197 (citation omitted).  Any "information released to the public is immediately digested and incorporated into the price of a security."  *Id.*  Previously digested information "will not cause a change in the stock price."  *Id.* (citation omitted); *see also Basic Inc. v. Levinson*, 485 U.S. 224, 241-46 (1988).

[6]      Plaintiff also critiques *Meyer* as being out of sync with the Second Circuit's controlling authority on loss causation.  (Opp. at 30 n.15).  But the court in *Meyer* specifically relied upon a pair of Second Circuit loss causation decisions, *Omnicom III*, 597 F.3d at 512, and *Lentell*, 396 F.3d at 175 n. 4, to conclude that an analyst's or short-seller's opinions "based on already-public information" could not "form the basis for a corrective disclosure."  *Meyer*, 710 F.3d at 1199 (citing *Dura*, 544 U.S. at 347-48).

misleading statements.[7]  Thus, in fact, there is no material difference between *Meyer* and this case.  In both, the information used in the short attack had been public for some time, and the decline in the company's stock price could not have been caused by anything revealed in the attack.  *Compare* Hornstine Decl. Ex. 12 at 2; Hornstine Decl. Ex. 11 at 1 (hyperlinking to SEC filings, court filings, and other public information) *with Meyer*, 710 F.3d at 1200.

Plaintiff's attempt to distinguish the Second Circuit's decision in *Omnicom III* on similar factual grounds (*i.e.*, because "articles were published nearly a year before the alleged corrective disclosure, raising the same issues regarding the same transaction" (Opp. at 29)), fails for the same reason.  Although *Omnicom III* did not involve a short attack, the alleged corrective disclosure identified by the plaintiff – negative press articles – did not purport to "reveal some then-undisclosed fact with regard to the specific misrepresentations alleged in the complaint" because the facts discussed in these articles had long been public

---

[7]     That some of these cases arose in the summary judgment context or applied Rule 9(b) to evaluate the loss causation element on a motion to dismiss makes no difference.  (Opp. at 30 n.16).  Obviously legal principles and standards from summary judgment opinions can be applied in the motion to dismiss context if there are insufficient factual allegations to state a claim.  *See Meyer*, 710 F.3d at 1199 (citing *Omnicom III* and affirming dismissal of securities fraud action).  Plaintiff is also incorrect that the Fourth Circuit in *Teachers' Ret. Sys. of La. v. Hunter*, 477 F.3d 162 (4th Cir. 2007) or the Eleventh Circuit in *Meyer* imposed some sort of heightened pleading requirement for loss causation allegations.  In *Hunter*, the court determined that plaintiffs must "plead [loss causation] with sufficient specificity to enable the court to evaluate whether the necessary causal link exists" and held that, even under the "relaxed pleading requirements of Rule 8(a)," negative characterization of previously known information cannot constitute a corrective disclosure.  472 F.3d at 186 (citing *Lentell*, 396 F.3d at 172).  In *Meyer*, the court did not require absolute "proof" of loss causation at the pleading stage, but instead affirmed dismissal because plaintiff's allegations did not state a plausible claim.  710 F.3d at 1201-02.  That also applies the Rule 8 standard.

(and thus, had already been assimilated by the efficient market and reflected in the company's stock price).  597 F.3d at 511-12.  The same is true in this case.  Just as the only thing new to the market in *Omnicom III* was journalists' negative characterizations of previously disclosed facts (which were insufficient to establish loss causation), the only new information here is the short sellers' negative slant on earlier disclosures (which is also insufficient).  *Compare id. with* MTD at 23-24, 42.

The few additional cases advanced in the Opposition do not support plaintiff's position.  In each case where a court found that loss causation was adequately pleaded, the market reacted to analyst or news reports containing a new corrective fact that was not just an advocate's hostile characterization of publicly available information.  *See Lormand v. US Unwired, Inc.*, 565 F.3d 228, 259-60 (5th Cir. 2009) (analyst reports contained specific, previously undisclosed facts about weak demand for new services and high "churn" rates that contradicted the defendant's prior public statements); *In re BP P.L.C. Sec. Litig.*, 922 F. Supp. 2d 600, 637-38 (S.D. Tex. 2013) (media reports revealed new information about issuer's safety standards); *Mass. Ret. Sys. v. CVS Caremark Corp.*, 716 F.3d 229, 240 (1st Cir. 2013) (corrective disclosure consisted of company's revelation that company "had problems with service and the integration of its systems" and new facts revealed in follow-up reports); *In re eSpeed, Inc. Sec. Litig.*, 457 F. Supp. 2d 266, 296-97 (S.D.N.Y. 2006) (analysts and media disclosed new information explaining disappointing financial results).

- 6 -

Plaintiff also argues that he has pleaded loss causation because Tangoe's stock dropped and "remains well below its pre-corrective disclosure price levels." (Opp. at 2, 29). This allegation is not in the Complaint, and it is irrelevant (and misleading) in any event.[8]  All securities fraud cases follow a stock price drop, but all stock price drops are not caused by securities fraud. *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 345 (2005) (securities laws do not exist to "provide investors with broad insurance against market losses, but to protect them against those economic losses that misrepresentations actually cause").

The Opposition also fails to disaggregate the impact on market price of the short sellers' opinions about Tangoe's organic growth rate (if any) from the impact of their myriad other complaints about the Company (if any) and from the fact that a short attack designed to suppress demand for Tangoe's shares was underway. (MTD at 43-44). Plaintiff is wrong (Opp. at 30-32) that he can skirt this requirement at the pleading stage. In fact, plaintiff must be able to "ascribe some

---

[8]     Plaintiff deliberately omits that by August 23, 2013, Tangoe's share price did, in fact, surpass the closing price from just before the first short attack ($20.09, *see* Compl. ¶ 150). *See* Declaration of Kerry C. Tipper in Support of Defendants' Reply Memorandum, Ex. 2 (Graph of Daily Tangoe Stock Closing Prices from August 27, 2012 to January 10, 2014) and Ex. 3 (Table of Daily Tangoe Stock Trading Information from August 27, 2012 to January 10, 2014); *see In re Bear Stearns Cos., Inc. Sec. Deriv., and ERISA Litig.*, 763 F. Supp. 2d 423, 507 n.14 (S.D.N.Y. 2011) (court can take judicial notice of stock prices)). It later fell again, at the end of October 2013, after another short attack (again focusing, in part, on organic growth). If anything, this replay of the earlier attacks demonstrates that the cause of Tangoe's stock drop was not the revelation of the falsity of any corporate statement but the efforts by short sellers to drive down the price. *See Meyer*, 710 F.3d at 1199 (short sellers' "opinions are exactly the type of confounding information … that do not qualify as corrective disclosures for purposes of loss causation").

rough proportion of the whole loss" to the alleged misstatements.  *See Lattanzio v. Deloitte & Touche LLP*, 476 F.3d 147, 158 (2d Cir. 2007).[9]

## III.   NONE OF THE CHALLENGED STATEMENTS WERE MATERIALLY FALSE OR MISLEADING

Plaintiff devotes much space to copying the flawed and conclusory allegations of the Complaint into the Opposition, and then declaring that they suffice to plead fraud under the Reform Act.[10]  But one cannot rebut a nuanced analysis showing that the Complaint's allegations lack an adequate factual basis by repeating the defective allegations themselves.  As defendants showed, the Complaint contains no factual basis for key assertions, including that Tangoe included in its organic recurring revenue calculations either revenue from contracts signed by an acquired business before an acquisition or revenue of an acquired business when acquired customers began to be serviced from Tangoe's platform.  (*See* MTD Part II.B.2).  Plaintiff also has no factual basis for alleging how Tangoe treated revenue from contracts signed after an acquisition,

---

[9]      Neither *In re General Electric Co. Sec. Litig.*, 857 F. Supp. 2d 367, 399 (S.D.N.Y. 2009) nor *Bear Stearns*, 763 F. Supp. 2d at 507 omit this disaggregation requirement.  In fact, *General Electric* repeats it, and held that plaintiff had disaggregated the fraud in question from the general market decline as a reason for its losses by pleading that the stock price fell significantly immediately following corrective disclosures. 857 F. Supp. 3d at 398-99.  *Bear Stearns* concerns the standard for pleading loss causation amid a market-wide downturn, not the standard for pleading loss causation where only one piece of an adverse report is alleged to have been corrective.  763 F. Supp. 2d at 506-07.  Plaintiff also cites to two recent (but irrelevant) Supreme Court decisions, *Amgen Inc. v. Conn. Retirement Plans & Trust Funds*, 133 S.Ct. 1184, 1197 (2013) and *Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S.Ct. 2179, 2187 (2011), (Opp. at 31 n.18), which have nothing to do with loss causation pleading standards.

[10]     Plaintiff has abandoned his claim that Tangoe is liable for a statement made by a third party analyst on the November 8, 2011 conference call.  (Opp. at 15 n.8; MTD at 25 n.18).

regardless of whether the contracts were to provide historically Tangoe solutions to acquired customers or acquired solutions to Tangoe customers.  (*See* MTD Part II.B.3.b-c).  The Opposition fails to address these fatal shortcomings.  *See NECA-IBEW Health & Welfare Fund v. Pitney Bowes Inc.*, 2013 WL 1188050, at *27 (D. Conn. Mar. 23, 2013) (dismissing claim based on allegations of falsity that were "conclusorily pled under *Iqbal* and far too bare to meet the particularity requirements of the Rule 9(b) and the [Reform Act]").  Nor does plaintiff quantify the amount by which Tangoe supposedly inflated its organic revenues during the Class Period, either by his old or new metric.  This also is fatal.  *See* MTD at 28-29; *Omnicom I*, 2005 WL 735937, at *1, *5 (dismissing organic growth claims absent quantification).

Perhaps recognizing that the Complaint's allegations lacked particularity and made no sense, plaintiff deserts his contention that "organic growth" must be calculated only in one specified way (*i.e.*, by totaling revenue generated by a "Core Subsidiary" that does not even exist (Compl. ¶¶ 5, 11)) in favor of an allegation that it may only be calculated in a different specified way – using a "twelve month rule" that factors in all revenues from an acquired company generated twelve months after acquisition (Opp. at 1).

Not only is it impermissible to advance new allegations in opposition to a motion to dismiss, *see Miley*, 926 F. Supp. 2d at 432, but also the new theory makes no more sense than the old one.  There remains no factual basis in the Complaint or Opposition to assert either that only the twelve month method or that only the "Core Subsidiary" method is proper.  In particular, *Omnicom I*, 2005

- 9 -

WL 735937, at *1, *5, does not hold that the twelve month method was an industry standard.  That was an allegation of the *Omnicom I* plaintiff that the Court effectively rejected in holding that defendants were entitled to use their own method.[11]  *See Omnicom I*, 2005 WL 735937, at *1.

In short, because plaintiff lacks a factual basis to allege that Tangoe's method was inappropriate, Tangoe was entitled to use its own calculation method and was not required to use a method that (as the sole paragraph of the Complaint referring to the twelve month method makes clear) it believed was inappropriate.  *Compare* Compl. ¶ 156 *with Omnicom I*, 2005 WL 735937, at *1, *5 *and AIG Global Sec. Lending Corp. v. Banc of America Sec. LLC*, 254 F. Supp. 2d 373, 385-86 (S.D.N.Y. 2003) (proper for defendant to compare itself to competitors using different accounting conventions where plaintiffs had not shown the defendants' own conventions were "not acceptable").

Plaintiff also overlooks that applying the twelve month method to calculate Tangoe's organic growth rate in 2013 would depress that rate both relative to other methods and relative to prior years.  In 2011 through mid-2012, Tangoe acquired five companies (Opp. at 7-8).  Thus, in 2013, after these companies were part of Tangoe for twelve months, the revenues from those companies would have rolled into the denominator of the twelve month method calculation.  This would depress the twelve month method growth rate for 2013, and would depress it more for 2013 than for 2011 and 2012 (when less acquired revenue would be in

---

[11]    In *Omnicom I* the court noted that the *plaintiffs* in that suit *alleged* that this twelve month rule was an industry standard but that the defendants there calculated organic growth differently.  *See Omnicom I*, 2005 WL 735937, at *1.

the twelve month method denominator).[12]  Thus, the 2013 projection says nothing about what Tangoe's organic growth rate determined by this or any other method would have been during the Class Period.[13]

*In re Ebix, Inc. Sec. Litig.*, 898 F. Supp. 2d 1325 (N.D. Ga. 2012), is irrelevant. The Complaint in that case contained factual allegations supporting the claim that Ebix's revenues were not growing *at all*.  *Id.* at 1343-44.  For example, plaintiffs made factual allegations showing that the company's product development budget had been slashed, its sales and marketing expenditures had been minimal, its employees were being laid off, and that *its products were not being sold*.  *Id.*  A former senior executive substantiated the lack of any sales at the company.  *Id.* at 1344.   In this case, plaintiff pleads no specific facts and did not allege that there had been no product sales.  The sources referred to in the

---

[12]     **For example, if the Company used the twelve month method to calculate organic growth then, twelve months after Tangoe acquired a new business, all of the historical Tangoe recurring revenues *and* its acquired businesses' recurring revenues would be included in the denominator of a growth rate calculation. Using the "Core Subsidiary" method advanced in the Complaint, none of the acquired businesses' recurring revenues would be included in the denominator. Accordingly, use of the twelve month method necessarily yields lower calculated growth rates than different methods (in any period more than twelve months after an acquisition).**

[13]     **In any event, Mr. Martino's *projection* that its organic growth rate (calculated using the twelve month methodology he thought was inappropriate) would be between sixteen to eighteen percent in *2013* cannot logically support plaintiff's argument that Tangoe misrepresented its organic growth during 2011 and 2012 (Opp. at 16).  The projection concerns a different period, and there is no basis in the Complaint (or Opposition) to conclude that the numbers using that method would have been the same in prior periods, that prior calculations used that method, or that use of another method would be unreasonable.**

Complaint are unreliable because they were not in a position to know how the Tangoe finance department calculated organic recurring revenue.

## IV.   PLAINTIFF'S *SCIENTER* ALLEGATIONS REMAIN DEFICIENT

### A.   *Defendants' Stock Sales*

Plaintiff attempts to show *scienter* by declaring that the defendants "sold massive amounts of stock." (Opp. at 22). But volume of stock sales alone can never support a strong inference of *scienter*, and the cases plaintiff cites (Opp. at 22) are not to the contrary. *See George v. China Automotive Systems, Inc.*, 2012 WL 3205062, at *10 (S.D.N.Y. Aug. 8, 2012) (defendants' stock trades during the class period were out of line with stock trades outside of the period); *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 75 (2d Cir. 2001) (defendant sold 80 percent of holdings during a short period but had not sold for many years beforehand). To support *scienter,* stock sales must be suspicious. (MTD at 37). Plaintiff offers no contextual analysis of defendants' stock sales, and therefore cannot show that they were suspicious. In fact, they are not suspicious at all. (*Id.*). One defendant, Mr. Subbloie, *increased* his stock holdings, a fact "wholly inconsistent" with *scienter*, *see Malin v. XL Capital Ltd.*, 499 F. Supp. 2d 117, 152 (D. Conn. 2007), and the other defendant, Mr. Martino, had his holdings decline by only a small amount (about 2.5 percent). (*See* MTD at 36-37).

Plaintiff also repeats his false and baseless assertion that Mr. Golding personally sold $59 million of Tangoe stock. (Opp. at 23). In fact, Mr. Golding's SEC filings (which are the basis for plaintiff's claim) demonstrate that he neither held nor sold any shares of the Company during the Class Period; and that he

disclaimed direct beneficial ownership in Edison's Tangoe holdings.  (MTD at 38-39).  In any event, Mr. Golding's *scienter* is irrelevant because he is not a Section 10(b) defendant.

> **B.** **Plaintiff's New Motive Theory Is Defective**

Plaintiff now advances a new argument: that at least Tangoe itself had a motive to keep Tangoe's stock price artificially inflated so as to finance its corporate acquisitions.  (Opp. at 23-24).  Plaintiff relies in this regard on *Rothman v. Gregor,* 220 F.3d 81 (2d Cir. 2000) (Opp. at 23), but the Second Circuit subsequently *rejected* this rationale because it is not based on a concrete personal benefit obtained by any *individual* at the company.[14]  *See Kalnit v. Eichler,* 264 F.3d 131, 139 (2d Cir. 2001) ("Motives that are generally possessed by most corporate directors and officers do not suffice"; "plaintiffs must assert a concrete and personal benefit to the individual defendants resulting from the fraud"); *see also Rombach v. Chang,* 355 F.3d 164, 177 (2d Cir. 2004) (rejecting allegations that corporate acquisition showed motive absent personal gain to defendants).  Because plaintiff fails to demonstrate how Mr. Subbloie or Mr. Martino benefitted *personally* and *concretely* from Tangoe's purchase of other companies, this new theory does not state a claim.  *Id.*; *Tabak v. Canadian Solar Inc.*, --- Fed. Appx. ----, 2013 WL 6697923 (2d Cir. Dec. 20, 2013) (summary order)

---

[14]     Plaintiff also suggests there can be corporate motive establishing *scienter* absent any individual's *scienter*, but that makes no sense because corporations only act through individuals.  *See Pitney Bowes*, 2013 WL 1188050, at *32 (rejecting allegation that corporation had motive to commit securities fraud for same reason allegations against individuals failed); *Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.,* 531 F.3d 190, 195-96 (2d Cir. 2008) (corporate *scienter* could be inferred where individuals lacked *scienter* only in hypothetical circumstance where misrepresentation was so egregious that *some individual* must have known it was false).  No such individual is identified here.

(affirming dismissal for failure to plead scienter where allegations did not demonstrate "concrete and personal benefit" to individual defendants).  It is in any event improper, as it appears nowhere in the Complaint.  *See Miley*, 926 F. Supp. 2d at 432.

C.    *"Access to Information" Is Not Enough*

The Opposition repeats the conclusions of the Complaint to the effect that Mr. Subbloie and Mr. Martino "must have known" that Tangoe's organic growth rate was lower than what the Company disclosed.  (Opp. at 24-26).  But the conclusion that the Company's organic growth rate was "importan[t]" (Opp. at 26) says nothing about whether the disclosures were incorrect, and status as "senior officers" is no substitute for facts supporting a strong inference of *scienter*.[15] (*Compare* Opp. at 12, 24-26 *with* MTD at 32).

Reliance on witnesses not in a position to know how organic growth rates were calculated adds nothing of consequence to the Complaint (Opp. at 25-26), particularly where the factual information attributed to the witnesses has little to do with the defendants' alleged *scienter*.  For example, plaintiff does not claim that the sales "memoranda" allegedly reviewed by the individual defendants discussed organic growth, revealed how it was calculated, or showed that organic growth numbers were inflated.  (MTD at 13, 32-33).  *See Pitney Bowes*,

---

[15]    Even accepting that plaintiff has articulated facts showing that organic growth was at the "core of [the company's] business," *In re JP Morgan Chase Sec. Litig.*, 363 F. Supp. 2d 595, 628 (S.D.N.Y. 2005), that would only mean that *if* plaintiff had pleaded specific facts showing Tangoe misrepresented its organic growth rate, it might be fair to infer that Mr. Subbloie and Mr. Martino knew those facts.  *Id.* (citation omitted).  But here, plaintiff has not pleaded a single such fact.

2013 WL 1188050, at *34 ("vague and generalized allegations of the mere existence of reports" fail to establish *scienter*).[16]

### D.   *Unrelated Litigation*

Plaintiff cannot be serious that the *settlement* of a *fourteen year old* claim by a *different company* that employed two of the defendants is probative of *scienter* in this case.  He cites no authority for the proposition, and the law is to the contrary.  *See Union Cent. Life Ins. Co. v. Ally Fin., Inc.*, 2013 WL 2154220, at *2 (S.D.N.Y. Mar. 29, 2013) ("Plaintiffs' citation to a number of lawsuits and government investigations involving the ... Defendants also provides no evidence of *scienter*" – even where company admitted liability).

## V.   THE CONTROL PERSON CLAIMS ARE DEFECTIVE

The control person claims against the individual defendants under Section 20(a) of the Exchange Act fail because plaintiff has not pleaded an underlying violation of the Exchange Act.  (MTD at 44).  In addition, plaintiff fails to cite any authority for the proposition that his conclusory and status-based allegations of "control" and "culpable participation" state a claim.  (Opp. at 32-33).  This is particularly true for Mr. Golding, an outside director who did not participate in the allegedly misleading analyst calls.  (MTD at 45-46).

## VI.   CONCLUSION

For these reasons and for the reasons specified in defendants' opening brief, the Court should dismiss the claims against defendants with prejudice.

---

[16]   Plaintiff fails to discuss this Court's recent decision in *Pitney Bowes* in which the Court rejected similarly conclusory *scienter* allegations.

Respectfully submitted,

TANGOE, INC., ALBERT R. SUBBLOIE JR.,
GARY R. MARTINO, and GARY P. GOLDING

By their attorneys,


/s/ Glenn M. Cunningham

William H. Paine, phv06001          Glenn M. Cunningham
Adam J. Hornstine, phv06000         Fed. Bar No. ct09995
Kerry C. Tipper, phv06002           Katherine R. Husband
WILMER CUTLER PICKERING             Federal Bar No. ct28564
HALE AND DORR LLP                   SHIPMAN & GOODWIN LLP
60 State Street                      One Constitution Plaza
Boston, MA  02109                    Hartford, CT 06103-1919
Tel: (617) 526-6000                  Tel.: (860)251-5722
Fax: (617) 526-5000                  Fax: (860)251-5218
                                     gcunningham@goodwin.com

## CERTIFICATE OF SERVICE

I hereby certify that on January 17, 2014, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

   /s/  Glenn M. Cunningham
        Glenn M. Cunningham